## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| *In re:* | ) | Chapter 7 |
| | ) | |
| Nathaniel D. Peterson, | ) | |
| | ) | |
| *Debtor.* | ) | Case No. 22-33622-KLP |
| | ) | |
| | ) | |
| CoStar Realty Information, Inc., | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| *v.* | ) | Contested Matter |
| | ) | |
| Nathaniel D. Peterson & | ) | |
| Lynn L. Tavenner, Esq., Chapter 7 Trustee, | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |

### NOTICE OF HEARING AND NOTICE OF
### MOTION FOR RELIEF FROM STAY AND SEEKING RELATED RELIEF

**PLEASE TAKE NOTICE THAT** CoStar Realty Information, Inc. ("CoStar"), through counsel, has filed with the Court a *Motion For Relief From Stay And Seeking Related Relief* (the "Motion"), in which CoStar seeks relief to obtain confirmation of an arbitration award entered on December 1, 2022 and related relief that the Court deems proper. A copy of the Motion is below, and you may also obtain a copy by contacting CoStar's under-signed counsel.

**YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, then you may wish to consult an attorney.**

If you do not want the Court to grant the relief requested in the Motion, or if you want the Court to consider your views on the Motion, then on or before March 12, 2023, you or your attorney must take the following actions:

James Donaldson, Esq. (VSB No. 80307)
LimNexus LLP
919 East Main Street, Suite 1000
Richmond, VA 23219
(804) 916-1567 (telephone)
(213) 955-9511 (facsimile)
jed.donaldson@limnexus.com
*Counsel to CoStar Realty Information, Inc.*

File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rule 9013-1(H).  If you mail your response, then you must mail your response to the Court for filing, then you must mail it early enough so that the Court will receive any response on or before March 12, 2023, which is three days before the hearing on the Motion.

> Clerk of Court
> U.S. Bankruptcy Court
> 701 East Broad Street, Suite 4000
> Richmond, VA 23219-1888

You must also mail a copy of your response to the following parties:

> James Donaldson, Esq.
> LimNexus LLP
> 919 East Main Street, Suite 1000
> Richmond, VA 23219

> Lynn L. Tavenner, Esq.
> 20 N. 8th Street, 2nd Floor
> Richmond, VA 23219-3302

**PLEASE TAKE FURTHER NOTICE THAT** the Motion is scheduled to be heard before the Court on **March 15, 2023 at 9:30 AM** prevailing Eastern Time, in the U.S. Bankruptcy Court, 701 East Broad Street, Room 5100, Richmond, VA 23219.  The hearing will be conducted in-person and via remote video conference using the Zoom for Government platform.  All parties who wish to attend the hearing via Zoom for Government must register in advance of the hearing by following the Court's instructions for remote hearings at this link: https://www.vaeb.uscourts.gov/procedures-hearings-hon-keith-l-phillips

If you fail to file a timely a written response and to attend the hearing even if a response is timely filed, then the Court may decide that you do not oppose the relief sought in the Motion, and the Court may enter an Order granting that relief.  Please govern yourself accordingly.

## MOTION FOR RELIEF FROM STAY AND RELATED RELIEF

CoStar Realty Information, Inc. ("CoStar"), through counsel and pursuant to 11 U.S.C. §§ 105(a) and 362 and Rules 4001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 4001(a)-1, 9013-1, and 9014-1(B)(2) of the Local Rules for the U.S. Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), files this motion (the "Motion") seeking entry of an order (the "Order") granting CoStar relief from the automatic stay, or in the alternative, an order that confirms the AAA Award, defined below.  In

support, CoStar states as follows:

## PRELIMINARY STATEMENT

1.       On December 1, 2022, after a full, evidentiary hearing on the merits, an arbitrator on behalf of the American Arbitration Association's Employment Arbitration Tribunal issued an award in favor of CoStar, as claimant, against the Debtor (the "AAA Award"), which was transmitted to CoStar and the Debtor on December 2, 2022.  (**Exhibit 1**, attached hereto, is a true and accurate copy of the AAA Award.)  That AAA Award enjoined the Debtor's wrongful conduct and halted his intentional breaches of his employment agreement with CoStar, and the Debtor has since complied with the injunctive relief of the AAA Award.

2.       Three weeks after the AAA Award was issued, however, the Debtor filed this chapter 7 bankruptcy case.  Through this Motion, CoStar seeks relief from, and modification to, the automatic stay to commence summary proceedings to confirm the AAA Award with a proper court, as dictated by the employment agreement between CoStar and the Debtor and the Federal Arbitration Act (the "FAA") so that CoStar can reduce the AAA Award to a judgment.  As set forth below, sufficient cause exists to grant to CoStar relief for that purpose.  Alternatively, if this Court concludes that it has jurisdiction to confirm the AAA Award, and all relief granted to CoStar in the AAA Award, then CoStar requests that this Court enter an Order confirming the AAA Award.

3.       The AAA Award included (a) a monetary award totaling $414,180.69, including CoStar's costs and fees incurred through arbitration, and (b) injunctive relief in favor of CoStar due to the Debtor's prepetition violations of his employment agreement with CoStar.  Among other wrongful acts, after his termination from CoStar, the Debtor "made derogatory and adverse statements, including posts on Instagram, a social media platform, about [CoStar] and about

3

officers of [CoStar] . . . that are inaccurate and misleading in nature, hindered recruitment, caused economic and reputational damages to [CoStar], and constitute a breach of the [employment] Agreement resulting in irreparable damage to [CoStar]." (**Ex. 1**, at 3.)  The AAA Award enjoined the Debtor from further violations of his employment agreement.  (**Ex. 1**, at 5.)

4.    The process to confirm an arbitration award under the FAA is summary and does not revisit the merits of the arbitration's decision—because the Debtor agreed to hear the parties' dispute through arbitration, all arguments were presented in front of the Arbitrator.  *See, e.g., Teamsters Local 177 v. United Parcel Service*, 966 F.3d 245, 254 (3d. Cir. 2020) ("Here the FAA provides for confirmation proceedings to be summary proceedings akin to the entry of consent decrees by requiring that the parties 'apply' for confirmation rather than file a complaint.").

5.    As of the Petition Date, the automatic stay imposed by § 362(a)(1) prevents CoStar from taking the routine, procedural action of confirming the AAA Award in a summary proceeding with a state or federal court.  While the AAA Award is a final award, confirmation is an important procedural step to secure CoStar's rights, and bankruptcy courts have often modified the automatic stay to authorize prevailing arbitration claimants to seek summary confirmation of a prepetition arbitration award entered against a debtor.  The Code and relevant authorities support CoStar's entitlement to relief from the stay to confirm the AAA Award with either a state court or federal court of competent jurisdiction.

## **BACKGROUND & PROCEDURAL HISTORY**

6.    Pursuant to an employment agreement between CoStar and the Debtor dated May 26, 2017 (the "Employment Agreement"), the Debtor began working at CoStar's Richmond, Virginia offices as a Tenant Researcher on June 5, 2017.  (**Ex. 1**, at 2.)  The Employment Agreement required that the Debtor (i) not disparage CoStar and its offices, directors, owners, and

4

employees, (ii) that any disputes arising from a breach of the employment agreement would be subject to binding arbitration in accordance with the American Arbitration Association ("**AAA**"), and (iii) that upon a breach or anticipatory breach of the employment agreement, CoStar is entitled to injunctive relief. (**Ex. 1**, at 2-3.)

7.      On July 8, 2021, CoStar terminated the Debtor for falsifying data concerning his job duties and performance. (**Ex. 1**, at 2.)  Pursuant to the Employment Agreement, the relevant provisions referenced above survived termination of the Debtor's employment with CoStar. (**Ex. 1**, at 2.)

8.      In December 2021, the Debtor began disparaging CoStar and certain of its executives and officers through social media accounts, including an Instagram account controlled and operated by the Debtor: @costar_memes. (**Ex. 1**, at 3.)

9.      In early 2022, the Debtor made derogatory and adverse statements about CoStar and its employees to *Business Insider*, a media outlet affiliated with a direct competitor of CoStar. On February 22, 2022 and March 31, 2022, *Business Insider* published to a global Internet audience derogatory statements that the Debtor made regarding CoStar and its employees, as well as publishing the Debtor's Instagram account that was dedicated to disparaging CoStar and its employees. (**Ex. 1**, at 4.)

10.     The Debtor continued to use the @costar_memes Instagram account to disparage and harass CoStar and its officers and employees through May 2022. (**Ex. 1**, at 4-5.)

11.     On May 27, 2022, pursuant to the Employment Agreement, CoStar, as claimant, filed with the AAA Employment Arbitration Tribunal an arbitration demand (the "**AAA Demand**"), naming the Debtor as respondent. (**Ex. 1**, at 1.)  In the AAA Demand, CoStar requested (i) a permanent injunction enjoying and restraining the Debtor's breaches of the Employment

5

Agreement, (ii) nominal damages of $1.00, (iii) all costs, fees, and expenses incurred, and that would be incurred, by CoStar to enforce the Employment Agreement, and (iv) other relief. AAA assigned to the AAA Demand case number 01-22-0002-2546 (generally, the "AAA Proceeding"), and Patricia Horan Latham, Esq. (the "Arbitrator") served as the sole arbitrator. (**Ex. 1**, at 1.)

12.    The Debtor, through counsel, responded to CoStar's AAA Demand on October 17, 2022. On October 18, 2022, the Arbitrator presided over an evidentiary hearing in Washington, D.C., at which the Debtor—represented by counsel—testified under oath, and CoStar's counsel argued on behalf of CoStar. The parties made post-hearing submissions on October 19 and 28 and November 9 and 18, 2022. On November 18, 2022, the Arbitrator closed the hearing. (**Ex. 1**, at 1.)

13.    On December 1, 2022, the Arbitrator issued the AAA Award, which found and concluded that the Debtor "made derogatory and adverse statements, including posts on Instagram, a social media platform about Claimant [CoStar] and about officers of [CoStar] . . . that are inaccurate and misleading in nature, hindered recruitment, caused economic and reputational damage to [CoStar], and constitute a breach of the [Employment] Agreement resulting in irreparable damage to [CoStar]." (**Ex. 1**, at 3.) The AAA Award was transmitted to the Debtor and CoStar on December 2, 2022.

14.    The Arbitrator awarded to CoStar the following relief: (a) injunctive relief; (b) nominal damages of $1.00; (c) attorneys' fees and expenses of $413,777.69; and (d) $402.00, equal to the filing fee in U.S. District Court. (**Ex. 1**, at 5.) The injunctive relief orders that the Debtor take the following actions:

> immediately and permanently cease and desist breaching the [Employment] Agreement, including breach of the [Employment] Agreement by making, publishing, communicating to others, and/or making available for view by others, directly or indirectly in any manner (including on an Instagram account and at

6

[CoStar]'s offices and [CoStar] sponsored recruiting and other events), any derogatory or adverse statements, written or verbal, including memes, regarding [CoStar] and/or its owners, directors, officers, employees, agents, affiliates, successors and/or assigns.

(**Ex. 1**, at 5.)

15.    The Debtor has complied in full with that binding injunction; he dismantled his Instagram page and ceased making disparaging statements about CoStar and its officers and employees.  Within three weeks of the issuance of the AAA Award, on December 21, 2022 (the "Petition Date"), the Debtor, through counsel, filed with this Court a voluntary petition seeking relief pursuant to chapter 7 of title 11 of the U.S. Code (the "Code").  (ECF No. 1.)

16.    On December 29, 2022, the Debtor filed with the Court his bankruptcy schedules and statement of financial affairs.  (ECF No. 13.)  Of note, the Debtor lists no secured debt on Schedule D and no unsecured, priority debt on Schedule E.  (ECF No. 13, at 12-13.)

17.    As to the Debtor's unsecured debt on Schedule F, the Debtor lists a total of $526,213.28 in debts, of which $33,689.00 pertains to student loan debt.  (ECF No. 13, at 22.)  The Debtor lists CoStar with a claim of $413,778.69 arising from the AAA Award.  (ECF No. 13, at 16.)    Much of the remainder of the Debtor's scheduled unsecured debts—approximately $78,000—stem from a judgment, credit card debts, and medical debts.  Thus, excluding student loan debt, CoStar's claim comprises nearly 85% of the Debtor's scheduled debts.  (ECF No. 13, at 13-22.)

18.    On January 19, 2023, Lynn L. Tavenner, Esq. was appointed interim chapter 7 trustee (the "Chapter 7 Trustee") and continues to serve in that capacity.  (ECF No. 17.)

19.    On February 13, 2023, the Chapter 7 Trustee presided over the Debtor's § 341 meeting of creditors, which has been adjourned to March 6, 2023.  (ECF Nos. 17-19.)

## RELIEF REQUESTED

20.     CoStar seeks entry of an Order from the Court in the form of the Proposed Order attached to this Motion at **Exhibit 2**, granting to CoStar relief from the automatic stay so that CoStar may seek confirmation of the AAA Award with the appropriate state or federal court. Alternatively, if this Court concludes that it has jurisdiction to confirm the AAA Award, then CoStar respectfully requests that the Court confirm the AAA Award.  The process to confirm an arbitration award under the FAA is summary and does not require a re-examination of the merits, and to do so would be reversible error.  *See, e.g., Hall Street Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) ("[T]he FAA has textual features at odds with enforcing a contract to expand judicial review once arbitration is over . . . § 9 carries no hint of flexibility in unequivocally telling courts that they 'must' confirm an arbitral award[.]").

21.     CoStar is ***not*** seeking any relief or authorization to enforce against the Debtor, or against property of the Debtor's bankruptcy estate, any prepetition, monetary claims, arising from the AAA Award or otherwise.  CoStar is only seeking relief to confirm, and reduce to judgment, the entire AAA Award in accordance with the AAA and the FAA.

## ARGUMENT

22.     To the extent that stay relief is required to confirm the AAA Award with another court, CoStar submits that sufficient "cause" exists to modify the automatic stay to confirm the AAA Award with the either the U.S. District Court for the District of Columbia or the Superior Court for the District of Columbia.

### A. The FAA Requires Confirmation Of The AAA Award

23.     The FAA, codified at title 9 of the U.S. Code provides that "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is

8

vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. None of the enumerated exceptions of 9 U.S.C. §§ 10, 11 apply in this instance; therefore, CoStar has one year from December 2, 2022 to seek confirmation of the AAA Award.

24.     The last step in any arbitration under the FAA is to have the award confirmed in a summary court proceeding.  *See, e.g., Rainwater v. Nat'l Home Ins. Co.,* 944 F.2d 190, 192-93 (4th Cir. 1991) (holding that last step in AAA arbitration is confirming arbitration award and entering judgment for prevailing party); *Teamsters Local 177 v. Utd. Parcel Serv.*, 966 F.3d 245, 248 (3d Cir. 2022) ("Confirmation is the process through which a party to arbitration completes the award process under the FAA, as the award becomes a final and enforceable judgment.").

**B. Relief From Stay Is A Viable Option For Confirmation Of The AAA Award**

25.     CoStar has not identified binding authorities that address the unique procedural posture of this case—an arbitration award that includes both monetary and injunctive relief and an intervening chapter 7 bankruptcy after issuance of the final award but before confirmation of that award.  There is, however, precedent for granting stay relief to confirm arbitration awards and to pursue injunctive relief regarding covenants in a debtor's employment agreement.  *See, e.g., In re Dorris Marketing Group, Inc.*, No. 03-15025-SSM, 2005 WL 6267050, at *1 (Bankr. E.D. Va. Jan. 27, 2005); *In re Hruby*, 512 B.R. 262 (Bankr. D. Colo. 2014).

26.     In 2005, Judge Mitchell of this Court relied on *Robbins* to address "whether the automatic stay should be modified to permit the [arbitration claimant] to seek confirmation in federal district court of a prepetition arbitration award against the debtor."  *Dorris Marketing Group, Inc.*, 2005 WL 6267050, at *1.  In that case, an arbitrator issued an award of $1 million in favor of the creditor-claimant, which filed a complaint to confirm the award with the U.S. District Court, but the debtor filed chapter 7 three days prior to the confirmation hearing.  Judge Mitchell

9

held that the creditor-claimant was entitled to seek confirmation of the award in the forum of its choosing and lifted the automatic stay to effectuate that choice. *Dorris Marketing Group*, 2005 WL 6267050, at *4.

27.    In *Dorris Marketing Group*, Judge Mitchell noted the lack of any "unwarranted expense or difficulty by having to appear in a distant or inconvenient forum . . . . and [t]he bankruptcy estate can be appropriately protected by requiring that any enforcement of the judgment, if one is entered, occur in this court." *Id.*, at *4 (citing *In re Robbins*, 964 F.2d 342 (4th Cir. 1992)).  Thus, Judge Mitchell permitted modification of "the automatic stay to permit the pending action in the United States District Court to confirm the arbitration award to go forward." *Dorris Marketing Group*, 2005 WL 6267050, at *4.

28.    Notably, Judge Mitchell commented that "[o]f course there is no reason why the action to confirm the award could not be brought in this court." *Id*., at *4.  Comparable to *Dorris Marketing*, CoStar is the recipient of a final arbitration award and has the option to seek stay relief to confirm the AAA Award before a U.S. District Court, or a state court, as dictated by the Employment Agreement between the parties.

29.    Decisions from other jurisdictions demonstrate that bankruptcy courts will modify the automatic stay to permit a creditor to pursue injunctive relief relating to employment agreements.  *See, e.g., In re Hruby*, 512 B.R. 262; *In re Hurvitz*, 554 B.R. 35 (Bankr. D. Mass. 2016) (cause existed to grant stay relief for creditor-employer to enforce non-compete and non-solicitation terms of employment agreement); *In re Gilpin*, 391 B.R. 201 (6th Cir. B.A.P. 2008) (holding that bankruptcy court correctly granted relief from stay to permit former employer-creditor to enforce prior injunction regarding violation of non-compete).

30.    In *Hruby*, a 2014 decision from the District of Colorado, the employee-debtor filed

a chapter 7 petition prior to the state court granting any relief to either party, and the employer-creditor requested stay relief to continue the state court litigation, seeking "relief from the automatic stay for the sole purpose of obtaining injunctive relief against the debtor and not for the purpose of pursuing the damages claims it has asserted in the Litigation." *Hruby*, 512 B.R. at 265.

31.     Ultimately, the *Hruby* court found cause and granted stay relief under § 362(d)(1), because (a) the employer-creditor's claims for injunctive relief did not comprise claims dischargeable in bankruptcy; and (b) the bankruptcy court lacked jurisdiction over the employer-creditor's claims concerning breach of covenants not-to-compete, non-solicitation, and confidentiality. *Id*., at 266-268.Here, the relief in the AAA Award is both monetary and injunctive in nature, so the most prudent course is for CoStar to be authorized to proceed with commencing the summary confirmation proceedings in accordance with the Employment Agreement, in either state or federal court.

### C. The Relevant Factors To Find Cause Under § 362(d)(1) Are Present

32.     Given the FAA's clear requirement to obtain summary confirmation of the AAA Award, and the parties' agreement that dictates the proper forum, CoStar submits that stay relief is appropriate in this situation, if this Court does not confirm the AAA Award.

33.     "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause . . . ." 11 U.S.C. § 362(d)(1).  With *Robbins*, the Fourth Circuit stated the requirements to demonstrate cause to modify the automatic stay to allow a state court action to continue.  *See In re Robbins*, 964 F.2d 342 (4th Cir. 1992). Recognizing that "cause" under § 362(d)(1) is determined on a case-by-case basis, the Fourth Circuit stated non-exclusive factors that the Court should consider "in deciding whether to lift the

automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court." *Robbins*, at 345 (internal citations omitted).

## 1. Non-Bankruptcy Law Controls The Employment Agreement

34.    The AAA Award arises from CoStar's breach of contract claim—a claim governed by state law—due to the Debtor's repeated, willful failure to comply with § 2.4 of the Employment Agreement, which prohibited the Debtor from making derogatory statements against CoStar and its owners, directors, officers, and employees.  (**Ex. 1**, at 2.)  Further, the injunctive relief included in the AAA Award does not affect administration of the Debtor's chapter 7 estate or property of the Debtor's estate.  Thus, this factor is satisfied in favor of CoStar.

## 2. Stay Relief Promotes Judicial Economy

35.    Here, CoStar submits that granting relief from stay to seek confirmation of the AAA Award is the most efficient and appropriate step regarding CoStar's rights *vis-à-vis* the Debtor. By seeking confirmation of the AAA Award with either a federal district court or state court, CoStar will ensure that the confirming court's order cannot be attacked collaterally.  While the *Hruby* decision from Colorado is not controlling in this Court, that decision stated that "[t]he interest of judicial economy and the expeditious and economical determination of litigation for the parties [] weighs in favor of relief.  The Court does not have jurisdiction to offer the parties an alternate forum to resolve the disputes that are the subject of the Motion.  Denying relief cannot

4869-3546-9651, v. 4

serve any interest of judicial economy." *Hruby*, 512 B.R. at 270.[1]

### 3. The Estate May Protected By Limiting Enforcement Of A Confirmed Award

36.     The language in the Proposed Order, at **Exhibit 2**, is drafted in a manner that clearly restricts enforcement and collection activities because § 362(a)'s stay remains in place as to those actions.  If stay relief is granted, then CoStar's relief will be limited to actions necessary to seek and obtain confirmation of the AAA Award with the appropriate state or federal court.  Further, given that this bankruptcy case is a chapter 7 liquidation, the relief requested by CoStar will have little, to no, effect on estate administration and any creditors of the Debtor.  There will be no effect on any distributions that would be received by the Debtor's creditors.

37.     For all of the foregoing reasons, CoStar submits that cause exists to grant to CoStar relief from the automatic stay so that it may seek confirmation of the AAA Award and the relief issued by the Arbitrator.

### NO PRIOR REQUEST

38.     CoStar has made no prior request for the relief sought in this Motion.

### CONCLUSION

39.     CoStar reserves all rights, claims, and defenses, including, without limitation, its rights under 11 U.S.C. §§ 105(a) and 362 and Rules 4001, 9013, and 9014 of the Bankruptcy Rules.  Nothing herein shall be construed as a waiver of, or otherwise prejudice, CoStar's rights, claims, or defenses with respect to any matters or parties in interest.

---

[1] CoStar incorporates by reference, as though fully restated herein the arguments stated in CoStar's *Motion For Extension Of Time To File Complaint Seeking A Determination Of Nondischargeability*, filed concurrent with this Motion on March 1, 2023.

4869-3546-9651, v. 4

**WHEREFORE**, CoStar respectfully requests that the Motion be granted, such that the Court confirms the AAA Award, or that the Court enter an Order substantially in the form of **Exhibit 2**, attached hereto, and that CoStar be awarded such other relief that the Court deems proper.

DATED: March 1, 2023                           COSTAR REALTY INFORMATION, INC.

*/s/ James Donaldson*
James Donaldson, Esq. (VSB No. 80307)
LimNexus LLP
919 East Main Street, Suite 1000
Richmond, VA 23219
(804) 916-1567 (telephone)
(213) 955-9511 (facsimile)
jed.donaldson@limnexus.com

*Counsel to CoStar Realty Information, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2023 a true copy of the foregoing was served via either electronic CM/ECF Notification or first class, U.S. Mail, postage prepaid on the following parties:

Office of the U.S. Trustee
701 E. Broad Street, Suite 4304
Richmond, VA 23219-1849

4 N. 4th Street Master Tenant
1425 E. Cary Street
Richmond, VA 23219-4274

Bank of America
ATTN: Bankruptcy
4909 Saverese Circle
Tampa, FL 33634-2413

Barclays Bank Delaware
ATTN: Bankruptcy
PO Box 8801
Wilmington, DE 19899-8801

Best Egg
1523 Concord Pike, Suite 201
Wilmington, DE 19803-3656

JPMorgan Chase Bank NA
Bankruptcy Mail Intake
700 Kansas Lane, Floor 01
Monroe, LA 71203-4774

Jason T. Lipscomb, DDS
1205 E. Main St.
Lower Level One
Richmond, VA 23219-3666

Medarva Imaging
1630 Wilkes Ridge Parkway,
Suite 100
Henrico, VA 23233-7410

Navient Solutions, Inc.
ATTN: Bankruptcy
PO Box 9500
Wilkes-Barre, PA 18773-9500

Navient Solutions, Inc.
PO Box 9635
Wilkes Barre, PA 18773-9635

Radiology Assocs. of Richmond
PO Box 13343
Richmond, VA 23225-0343

SoFi Lending Corp.
ATTN: Bankruptcy
PO Box 654158
Dallas, TX 75265-4158

Synchrony Bank – Venmo
ATTN: Bankruptcy
PO Box 965015
Orlando, FL 32896-5015

Synchrony Bank – Amazon
ATTN: Bankruptcy
PO Box 965060
Orlando, FL 32896-5060

Synchrony Bank – Care Credit
ATTN: Bankruptcy
PO Box 965064
Orlando, FL 32896-5064

Synchrony Bank – Ashley Furniture
ATTN: Bankruptcy
PO Box 965060
Orlando, FL 32896-5060

Synchrony Bank – Paypal Credit
ATTN: Bankruptcy
PO Box 965060
Orlando, FL 32896-5060

Target
c/o Financial & Retail Servs.
Mailstop BT POB 9475
Minneapolis, MN 55440-9475

Lynn L. Tavenner, Esq.
20 N. 8th Street, 2nd Floor
Richmond, VA 23219-3302

Stephen L. Flores, Esq.
Flores Law, PLLC
530 E. Main Street, Suite 320
Richmond, VA 23219-2412

Chase Card Servs.
ATTN: Bankruptcy
PO Box 15298
Wilmington, DE 19850-0000

Nathan D. Peterson
312 E. Broad Street, Apt. 401
Richmond, VA 23219

/s James Donaldson

4869-3546-9651, v. 4

## EXHIBIT 1 – AAA AWARD

## AMERICAN ARBITRATION ASSOCIATION
## EMPLOYMENT ARBITRATION TRIBUNAL

_____

Case Number: 01-22-0002-2546

CoStar Realty Information, Inc., Claimant

-vs-

Nathaniel Peterson, Respondent

_____

## AWARD OF ARBITRATOR

I, Patricia Horan Latham, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with an arbitration agreement entered into by the parties, and having been duly sworn, and having duly heard the proofs and allegations of the parties, and Claimant CoStar Realty Information, Inc., being represented by attorneys Megan L. Meier, Janes E. O'Toole, and Elizabeth Locke, and Respondent Nathaniel Peterson being represented by attorney Ken Vedaa., do hereby FIND and AWARD as set forth below.

Claimant CoStar Realty Information, Inc., (CRI) filed a Demand with the American Arbitration Association (AAA) dated May 27, 2022, alleging breach of contract and seeking permanent injunctive relief enjoining alleged breaches by Respondent Nathaniel Peterson (Peterson), nominal damages of $1.00, and reasonable sums and costs, including attorneys' fees, incurred to enforce the Agreement. This matter is being administered under the AAA Employment Arbitration Rules and Mediation Procedures (AAA Rules).

Respondent Peterson did not file an answer with the AAA within the time period specified in AAA Rule 4 and did not object to the jurisdiction of the arbitrator or to the arbitrability of the claim in accordance with AAA Rule 6.

The telephonic pre-hearing scheduling conference was held August 30, 2022. Subsequently, Respondent filed a submission, dated October 17, 2022, setting forth admissions and denials and defenses and requesting that the Arbitrator enter a decision in Respondent's favor.

The evidentiary hearing was held on October 18, 2022 in Washington, DC. The following exhibits were offered and admitted: Claimants Exhibits 1-7, 9-12, 14-17, 20-29, 31-32, 35-38, 40-44, 48-49, 52-54, and 56-59 and Respondent's Exhibits 14 and 15. Submissions were filed by the parties on October 19, October 28, November 9, and November 18, 2022. The hearing was closed on November 18, 2022.

## FINDINGS

Respondent Peterson  commenced employment with Claimant CRI June 5, 2017 and was employed by Claimant until July 8 2021.

Respondent executed an agreement titled Terms and Conditions of Employment (Agreement) on May 26, 2017, prior to commencing employment with Claimant. C EX 1

Respondent's employment was terminated by Claimant CRI for falsifying data relating to the performance of his job duties. Respondent testified as to such termination that he "got fired deliberately" so that he would not have to pay back to Claimant a $5000.00 tuition reimbursement he had received from CRI:

"And the last month I was there, I deliberately spent trying to get fired because I didn't want to have to pay back the tuition reimbursement money I'd  taken out, which you only have to repay back if you quit. So, I got fired deliberately in order to avoid paying back that $5,000 to them." TR 106

## Agreement

The Agreement terms, to which Respondent Peterson agreed, include those shown be-low.

Section 2.4 <u>No Derogatory Statements</u> provides that the employee "will not make or publish, in any manner any derogatory or adverse statements, written or verbal, re-garding the Company or its owners, directors, officers, employees, agents, affiliates, successors and/or assigns, except as permitted by law, to anyone…." C EX 1 page 3

Section 4 <u>Enforcement</u> provides that, in addition to any remedies otherwise available at law or in equity, the parties agree that CRI shall be entitled to particular forms of relief for breach of the Agreement, including (a) "injunctions, both preliminary and permanent" and (b) "recovery of all reasonable sums and costs, including attorneys' fees," incurred to enforce the Agreement. C EX 1 page 5

Section 5.5 <u>Survival</u>  provides that "the provisions contained in this Agreement shall survive any termination of the Employee's employment with CRI." C EX 1 page 6

Section 5.7 <u>Payment of Costs and Attorneys' Fees</u> provides that a party "who breaches the terms of this Agreement shall pay to the non-defaulting party all of the non-de-faulting party's costs and expenses, including attorneys' fees, incurred in enforcing the terms of the Agreement, subject to the provisions of Section 5.10 (e)." C EX 1 page 6

Section 5.10(a) <u>When Arbitration is Required</u> provides for arbitration of disputes, claims, or controversies concerning the employment relationship and provides that

"the parties agree to submit such dispute to final and binding arbitration" pursuant to the provisions of the AAA employment dispute resolution procedures. C EX 1 page 6

Section 5.10(c) <u>Remedies</u> expressly provides that the Arbitrator "shall have the power to award any types of legal or equitable relief…." C EX 1 page 7

Section 5.10(e) <u>Costs of Arbitration</u> provides that the arbitration fees shall be paid by Claimant CRI and that, notwithstanding the foregoing, "in the event that CRI is the prevailing party" in the arbitration, "the Employee shall pay an amount equal to the then current filing fee in federal district court." C EX 1 page 7

## AAA Rules

The AAA Rules state as set forth below as to jurisdiction in Rule 6 and as to the Award in Rule 39:

Rule 6. Jurisdiction
"a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part….
c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award."

Rule 39. The Award
"The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law…."

## Derogatory, Adverse, and Damaging Statements by Respondent Regarding Claimant

Respondent Peterson made derogatory and adverse statements, including posts on Instagram, a social medial platform, about Claimant CRI and about officers of CRI (including  Andrew Florance, CEO, and Lisa Ruggles, Vice President) that are inaccurate and misleading in nature, hindered recruitment, caused economic and reputational damage to CRI, and constitute a breach of the Agreement resulting in irreparable damage to CRI.

In December 2021, Respondent created a @costar_memes Instagram account (Instagram account) to post derogatory, adverse, and damaging statements about Claimant CRI and officers of CRI. Respondent testified that he sought to disparage and make derogatory postings about CRI. Since December 2021, Respondent has posted over 500

derogatory or adverse memes regarding CRI on his account, which has over 4100 fol-
lowers. TR 60, 61, 94, 117 and  C EX 2-7, 9-12, 14-18, 20-29, 32, 34

Respondent has attended events, including recruiting events, sponsored by CRI and
has appeared in front of CRI's offices as shown in posted photos of Respondent giving
the middle finger at those locations. C EX 2, 12, 14, 15, 16, 28

Respondent has communicated with Business Insider, a business news website, which
is owned by a competitor of CRI. Respondent testified that he contacted a Business
Insider reporter because:

"I was given his contact information by a follower of the page because they said that
some of the stories that were posted to the account should be given broader public
access." C TR page 82

In fact Respondent sent to Business Insider the link to his Instagram account, and
Business Insider has published photographs and memes that were posted on Respon-
dent's account. C TR page 83

For example, Business Insider published an article featuring Respondent's Instagram
account on February 22, 2022, including a picture of Respondent giving the middle
finger in front of Claimant's office building in Richmond, VA. The next day, February
23, 2022, an arsonist set fire to two cars in the parking garage for that building, caus-
ing Claimant to increase security. Respondent confirmed in his testimony, with regard
to Claimant's increase in security, that he posted on his account "Finally got the
stingy bastard to spend money on me," which is a reference to the CEO of Claimant
CRI. TR page 84-85 and C EX 2

Claimant summarized Respondent's posts as follows in its post hearing brief:

"Specifically, Mr. Peterson published posts that:
glorified violence, including an arson attack on CoStar premises; depicted the use of
firearms and showed individuals in danger; pictured Mr. Peterson repeatedly returning
to and making lewd gestures near CoStar premises; celebrated breaches of CoStar's
security measures; reveled in the harassment of CoStar employees and potential can-
didates at recruiting events; celebrated damage that Mr. Peterson's @costar_memes
account had done to CoStar by inhibiting the company's ability to recruit potential
candidates; and attacked, harassed, degraded, and shamed Lisa Ruggles and Andrew
Florance, and specifically targeted them, including posts that showed those individu-
als committing acts of violence or causing the death of others, depicted them being
subject to violence or other potential harm, or compared them to dictators, pe-
dophiles and other criminals."

Regarding Respondent's conduct after the filing of the Demand by Claimant CRI in this
Arbitration, Respondent took screenshots of the Arbitration Demand and of a shirt
referencing arbitration and posted them to his Instagram account. C EX 37, 38, 40

As to economic damage to Claimant, Michael Shamus, Claimant's Director of Security, stated in his Affidavit of September 28, 2022 that, as a result of security concerns caused by Respondent's posts on his Instagram account, Claimant, since February 11, 2022, "has expended over $61,000 on armed security professionals and over $120,312 on executive protection to date." C EX 57

Respondent testified as to his intent to continue to make derogatory and adverse posts and statements about Claimant and to bleed CoStar dry for a long as possible:

"Q.    Okay.  So, it is your intention to bleed CoStar dry for as long as possible, right?
 A.    With the memes account, I would love to do that, yes." TR page 129

### Relief

Claimant CRI is entitled to (1) injunctive relief, (2) nominal damages in the amount of $1.00, (3) attorneys' fees and expenses in the amount of $413,777.69, which amount is computed in accordance with the applicable Updated Laffey Matrix, and certain costs.

## CONCLUSIONS

Respondent Nathaniel Peterson is in breach of the Agreement with Claimant CoStar Realty Information, Inc., titled Terms and Conditions of Employment, in that Respondent Peterson made derogatory and adverse statements, including posts on his Instagram account, about Claimant and about officers of Claimant that are inaccurate and misleading in nature and that have caused, and would continue to cause, irreparable damage to Claimant by hindering recruiting, creating significant security concerns, and causing irreparable economic and reputational damage.

Claimant is entitled to injunctive relief. Accordingly, Respondent Nathaniel Peterson hereby is ordered to immediately and permanently cease and desist breaching the Agreement, including breach of the Agreement by making, publishing, communicating to others, and/or making available for view by others, directly or indirectly in any manner (including on an Instagram account and at Claimant's offices and Claimant sponsored recruiting and other events), any derogatory or adverse statements, written or verbal, including memes, regarding Claimant and/or its owners, directors, officers, employees, agents, affiliates, successors and/or assigns.

Respondent shall pay to Claimant nominal damages in the amount of $1.00.

In accordance with Section 5.10 (e) of the Agreement, Respondent shall pay to Claimant, the prevailing party in this Arbitration, toward costs of arbitration the amount of $402.00, which is an amount equal to the current filing fee in the United States District Court for the District of Columbia.

Respondent shall pay to Claimant the attorneys' fees and expenses incurred by Claimant to enforce the terms of the Agreement in the amount of $413,777.69.

The administrative fees of the American Arbitration Association totaling $2,950.00, and the compensation of the Arbitrator totaling $3,800.00 shall be borne as incurred.

All amounts due from Respondent to Claimant hereunder shall be paid within sixty days of the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

I, Patricia Horan Latham, do hereby affirm, upon my oath as Arbitrator, that I am the individual described herein and who executed this instrument, which is my Award.

_____
Patricia Horan Latham, Arbitrator

Dated: December 1, 2022

## EXHIBIT 2 – PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| *In re:* | ) | Chapter 7 |
| | ) | |
| Nathaniel D. Peterson, | ) | |
| | ) | |
| *Debtor.* | ) | Case No. 22-33622-KLP |
| | ) | |
| | ) | |
| CoStar Realty Information, Inc., | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| *v.* | ) | Contested Matter |
| | ) | |
| Nathaniel D. Peterson & | ) | |
| Lynn L. Tavenner, Esq., Chapter 7 Trustee, | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |

**ORDER GRANTING MOTION FOR RELIEF FROM STAY AND RELATED RELIEF**

This matter is before the Court on the *Motion For Relief From Stay And Related Relief*

filed on March 1, 2023 (the "Motion"; ECF No. ●[1]) by CoStar Realty Information, Inc. ("CoStar"),

seeking relief pursuant to 11 U.S.C. §§ 105(a) and 362 and Rules 4001, 9013, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 4001(a)-1,

9013-1, and 9014-1(B) of the Local Rules for the U.S. Bankruptcy Court for the Eastern District

of Virginia (the "Local Rules"), as further described in the Motion; and the Court having

jurisdiction to consider the Motion and relief requested under 28 U.S.C. §§ 157 and 1334; and that

---

[1] Unless stated otherwise, capitalized terms not defined in this Order shall have the meaning ascribed to them in the Motion.

James Donaldson, Esq. (VSB No. 80307)
LimNexus LLP
919 East Main Street, Suite 1000
Richmond, VA 23219
(804) 916-1567 (telephone)
(213) 955-9511 (facsimile)
jed.donaldson@limnexus.com
*Counsel to CoStar Realty Information, Inc.*

the Court may enter this Order on a final basis under Article III of the U.S. Constitution; and in

consideration that the Motion and relief requested presents a core proceeding under 28 U.S.C. §

157(b); and due and proper notice of the Motion having been provided; and no other or further

notice needing to be provided; and, the Court having determined that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein, which relief is fair and

equitable; and upon the evidentiary record for all of the proceedings had before the Court, and

after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY ORDERS AS FOLLOWS**:[2]

1.      The relief requested by CoStar in the Motion is GRANTED, as set forth in this

Order.

2.      CoStar has demonstrated sufficient "cause" within the meaning of 11 U.S.C. §

362(d)(1), and CoStar is granted relief from the automatic stay imposed by 11 U.S.C. § 362(a).

The automatic stay of 11 U.S.C. § 362(a) is modified and terminated so that CoStar—and any of

CoStar's agents, counsel, employees, and representatives—may pursue and seek confirmation of

the AAA Award, entered on December 1, 2022, by Patricia Horan Latham, Esq., as Arbitrator, in

AAA Proceeding number 01-22-0002-2546.

3.      CoStar is expressly authorized by this Court to pursue and seek confirmation of the

AAA Award with any state or federal court with jurisdiction over the parties and consistent with

the Employment Agreement, including, without limitation, the U.S. District Court for the District

of Columbia and the Superior Court for Washington, D.C. CoStar is expressly authorized by this

Court to pursue and seek confirmation of any and all aspects of the AAA Award and all manner

of relief granted and awarded by the AAA Award, including, without limitation, injunctive relief,

---

[2] Where appropriate, conclusions of law shall be construed as findings of fact, and findings of fact shall be construed as conclusions of law.  *See* Fed. R. Bankr. P. 7052.

nominal damages, and attorneys' fees, costs, and expenses.

4.      CoStar is expressly authorized by this Court to take all necessary, appropriate, and reasonable actions in furtherance of the relief provided by this Order, so that CoStar may pursue and seek confirmation of the AAA Award, including, without limitation, filing with a proper Court any petition, complaint, pleading, motion, brief, objection, response, exhibits, and/or related documents and papers.  CoStar is expressly authorized to serve on any and all necessary parties, including, without limitation, the Debtor and his counsel, any of the foregoing documents and papers necessary to confirm the AAA Award.  CoStar and its agents, counsel, employees, representatives, and other authorized third-parties acting on behalf of CoStar are each authorized to take any steps necessary to implement the terms of this Order.

5.      Except as set forth in this Order, the automatic stay of 11 U.S.C. § 362(a) remains in effect as to the Debtor and property of the Debtor's chapter 7 bankruptcy estate, and, absent further relief, CoStar shall not take any actions to enforce the AAA Award against the Debtor or the Debtor's chapter 7 bankruptcy estate.

6.      Any objections to the relief sought in the Motion and granted in this Order that have not been adjourned, overruled, withdrawn, or resolved are OVERRULED and DENIED in all respects on the merits.

7.      All parties'—including CoStar, the Debtor, the Chapter 7 Trustee, and/or any other party-in-interests—rights, claims, remedies, and defenses are preserved with respect to any prepetition or post-petition claims not expressly addressed by this Order.

8.      This Order and the relief authorized and granted by this Order shall be binding upon any successor trustee appointed in this chapter 7 bankruptcy case, and also binding on any party, including a chapter 13 trustee, in the event that this chapter 7 bankruptcy case is converted to a

4869-3546-9651, v. 4

case proceeding under a different chapter of the Code.

9.    This Court shall retain exclusive jurisdiction with respect to any dispute arising under, arising from, or related to this Order, and the implementation and interpretation of its terms.

10.    Any stay that would otherwise delay the effectiveness of this Order, including, without limitation, Rule 4001(a)(3) of the Bankruptcy Rules, is hereby WAIVED, and this Order shall be effective immediately upon entry on the Court's Docket, and CoStar shall be immediately entitled to proceed to take action to pursue and seek confirmation of the AAA Award.

DATED:

_____
U.S. BANKRUPTCY JUDGE

ENTERED ON DOCKET:

*I Ask For This*:

/s/ James Donaldson
James Donaldson, Esq. (VSB No. 80307)
LimNexus LLP
919 East Main Street, Suite 1000
Richmond, VA 23219
(804) 916-1567 (telephone)
(213) 955-9511 (facsimile)
jed.donaldson@limnexus.com
*Counsel to CoStar Realty Information, Inc.*

4

## **LOCAL RULE 9022-1(C) CERIFICATION**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by, or served on, all necessary parties.

*/s/ James Donaldson*

5

**PARTIES TO RECEIVE COPIES**:

James Donaldson, Esq.
LimNexus LLP
919 East Main Street, Suite 1000
Richmond, VA 23219

Lynn L. Tavenner, Esq.
20 N. 8th Street, 2nd Floor
Richmond, VA 23219-3302

Stephen L. Flores, Esq.
Flores Law, PLLC
530 E. Main Street, Suite 320
Richmond, VA 23219-2412

4869-3546-9651, v. 4